HASTORF v. F. R. LONG–W. G. BROADHURST CO. et al.

(Circuit Court of Appeals, Second Circuit. January 16, 1917.)

No. 116.

1. SHIPPING ☞41—CHARTERS—DEMISE OF SCOW.
   The charter of a scow without motive power, but including a man to take care of her, generally called the master, at a stated hire per day, is a demise by which the charterer becomes the owner, pro hac vice, but as between the parties the owner is responsible for any injury to the boat through the acts or negligence of the master.

   [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 149–155.]

2. SHIPPING ☞54—CHARTER—LIABILITY FOR INJURY TO VESSEL.
   The fact that one of the pockets of a dumper scow under such a charter became clogged while in use by the charterer, so that it would not dump, does not in itself establish negligence of the charterer, so as to render him liable to the owner for the injury.

   [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 219–221.]

3. SHIPPING ☞54—CHARTER—LIABILITY FOR INJURY TO VESSEL.
   A scow, while in possession of a charterer under a demise, was grounded through the fault of her master, who was the servant of the owner, and while so aground was injured by blasting done by the charterer; a very excessive charge being used in one of the blasts. Held that, while not liable for the grounding, the charterer was liable for the injury from the blast being bound to know that the boat was liable to injury therefrom while aground and to exercise due care.

   [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 219–221.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Albert H. Hastorf, owner of the dumper scow Montreal, against the F. R. Long-W. G. Broadhurst Company and Henry E. Fox, impleaded. Decree for respondents, and libelant appeals. Modified.

Foley & Martin, of New York City (William J. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellant.

Joseph D. Lee and Peter S. Carter, both of New York City, for appellee F. R. Long-W. G. Broadhurst Co.

Nolan Brothers, of New York City, for appellee Fox.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. [1] April 16, 1912, Hastorf, the libelant, owner of the dumper scow Montreal, chartered her, including a man to take care of her, to the Long-Broadhurst Company, for an indefinite time at $20 a day. The contract was entirely oral. Such employment of boats without motive power of their own, which go, including a man generally called the master, into the absolute control of the charterer, have in this harbor, at least since the decision of the late Judge Addison Brown in 1892 in The Daniel Burns (D. C.) 52 Fed. 159, been regarded as demises; the charterer becoming the owner pro hac vice. Monk v. Cornell Steamboat Co., 198 Fed. 472, 117 C. C. A. 232. The District Judge thought that our decision in North Atlantic Dredging Co. v. McAllister Steamboat Co., 202 Fed. 181, 120 C. C. A. 395, indicated that such a charter as the one now under consideration was not a demise. In that case the substantial question involved was whether the daily hire of a pump dredge was to be paid only while the dredge was in operation, or whether it also covered the time occupied in getting her to the place of her work and back to her original berth. In other words, was the contract one for mere services while working, or was it a charter from the time the dredge left her original berth to the time she returned to it. We held it to be a charter. As to another very subordinate claim, we held the charter not to be a demise, without going at large into the facts, because the dredge, with her crew of 18 men, remained in the possession and control of the owner. There was no intention whatever to depart from or qualify previous decisions.

[2] The Long-Broadhurst Company employed the scow in carrying the débris of an old pier which they were tearing down at Hackensack, N. J., to sea. She had six pockets, and No. 5 got clogged, so that it would not dump. Thereupon it was arranged that the libelant should take the scow May 2d, load the other five pockets, take her to sea, and try to clear the stuck pocket. This he did not succeed in doing, and May 6th the Long-Broadhurst Company took possession again and delivered the scow to one Fox, who was engaged in excavating in Pelham Bay. Fox loaded her with the excavated material to be carried to sea. While there the scow got aground, suffering some dam-

age, which was considerably increased by Fox's use of dynamite in blasting.

. It will thus be seen damage was done to the No. 5 pocket while the scow was in the exclusive possession of the Long-Broadhurst Company, and to her bottom while she was in the exclusive possession of Fox, to whom the Long-Broadhurst Company had sublet her. The Long-Broadhurst Company was responsible, not only for its own negligence, but for any negligence of Fox, and brought him in as a party under the fifty-ninth rule in admiralty (29 Sup. Ct. xlvi). The mere fact that No. 5 pocket would not dump was not proof of negligence, and no other proof was offered. The clogging of the pocket is quite consistent with the character of the material the scow was intended to carry. We think the Long-Broadhurst Company is not liable for this claim.

The District Judge found that the grounding of the scow at Pelham Bay Saturday, May 11th, was due to the unreasonable refusal of her master to permit her to be moved to a place where she would safely lie afloat. This in his opinion caused the boat to hog and we agree with him that the libelant cannot recover for the damage so caused. Between the owner and the charterer in cases of such boats, the former is liable for any injury to the boat by reason of the negligence of her master in caring for her. Hastorf v. Hudson River Co. (D. C.) 110 Fed. 669, Zabriskie v. City (D. C.) 160 Fed. 235.

[3] The District Judge found further that damage was done to the king posts and braces of the scow while she lay aground on the morning of May 13th or 14th, as the result of Fox's blasting. He held, however, that the libelant was bound to know that injuries were much more likely to be sustained by a boat aground than by one afloat, and apparently disallowed a recovery for the damage caused by the blasting as a consequence of the grounding for which he had held the libelant liable. But Fox was also bound to know that this boat which was in his custody would be liable to such injury, and it lay upon him to take the necessary precautions to prevent injury. The proof is that the explosion shook the scow most violently, and a very excessive load of dynamite was used on one occasion. We assume that Fox was authorized by public authority to make these blasts, and was not liable for the consequences if he used due care (Benner v. Dredging Co., 134 N. Y. 156, 31 N. E. 328, 17 L. R. A. 220, 30 Am. St. Rep. 649), but for an injury to a boat in his possession which he knew or through his agents was bound to know was aground, we think he would be liable, especially when caused by excessive blasts.

The court below is directed to modify the decree, by giving the libelant compensation for damages resulting from the blasting, with costs of both courts, payable primarily by Fox, and secondarily by the Long-Broadhurst Company.