### THE IRVING.

### THE PERTH AMBOY NO. 3.

### CONNERS MARINE CO., Inc. v. PETTERSON LIGHTERAGE & TOWING CORPORATION et al.

#### No. 17022.

District Court, E. D. New York.

May 14, 1947.

Purdy & Lamb, of New York City (Edmund F. Lamb, of New York City, of counsel), for libelant.

Kirlin, Campbell, Hickox & Keating, of New York City (John F. Gerity and John H. Hanrahan, Jr., both of New York City, of counsel), for respondents.

Burlingham, Veeder, Clark & Hupper, of New York City (Adrian J. O'Kane and John L. Belford, both of New York City, of counsel), for respondents-impleaded.

ABRUZZO, District Judge.

This is a suit in admiralty. The libelant was the owner of The Barge Irving and, on March 8, 1943, chartered the same to the Petterson Lighterage & Towing Corporation. From February 1 to March 9, 1943, The Irving was in dry dock being completely overhauled and repaired so that when it was turned over to Petterson it was in a good seaworthy condition. When this barge was again seen by the libelant in a dock at Elizabeth Port, New Jersey, it was damaged according to the survey, Exhibit 1.

The damage consists of the following: The starboard quarter of The Irving had a plank split either six inches or, at the most, twelve inches, below the water line. Another plank was broken that was immediately underneath the one which was split. A four-foot piece of rake fender which had been immediately over the split and broken planks was missing. This rake fender started immediately at the water line.

The facts which caused this damage may be summarized briefly as follows:

On the night of May 11, 1943, The Irving was a part of a flotilla of fifteen barges. The Numatic, The Perth Amboy No. 3, and The Panther were the tugs in charge of this flotilla. The Perth Amboy No. 3 was the lead tug, The Numatic was on the port side, and The Panther was on the starboard side. There were four tiers of three boats abreast, a fifth tier of two boats, one of which was The McLain 200, and The Irving which was to all intents and purposes the sixth tier, tailing by itself and made fast to The Mc-Lain 200, stern first.

The Perth Amboy No. 3, the hawser tug in charge of the tow, had two rope hawsers, one running to the port head tier boat and the other to the starboard head tier boat. The hawsers were about 300 feet long. The tow had a length over-all of about 900 feet.

As a result of the manner in which The Irving was made fast it swung "back and forth." The captain of The Irving at about 12 midnight felt a bump on his starboard side, went out on deck and saw that his barge had just passed the Baltimore & Ohio Bridge. This bridge has an abutment in its center separating the New Jersey and Staten Island shores. He could see that his barge had just passed through the bridge between the abutment and the Staten Island shore, which would place the abutment on his starboard side where the bump was felt. He, of course, did not know what caused this bump. The captain of The Numatic testified that when the flotilla got near the bridge he let go of his line up in front of the tow and took a position between the abutment of the bridge and the flotilla to act as a buffer or fender to the barges in order to prevent the barges from coming in contact with the abutment of the bridge. The tide was flood and halfway under the bridge the current sets from Staten Island over to the New Jersey shore.

As The McLain 200 passed the abutment, The Numatic acting as a buffer was able to keep The McLain 200 from striking the abutment. While The Tug Numatic was in that position The Irving started to sheer in toward the abutment due to the manner in which The Perth Amboy No. 3, the leading tug, was maneuvering the tow and the tide which was setting toward the abutment. The Perth Amboy No. 3 had altered her course to her right and pulled the head tiers of the flotilla toward the Staten Island shore. This was done to offset the current and in turn set The Irving over toward the bridge abutment, necessitating The Numatic to maneuver so as to keep The Irving from striking the abutment; but, instead of maneuvering carefully, The Numatic, in an effort to prevent The Irving from sheering over toward the abutment, struck it. The captain of The Numatic described this as a medium blow. The after starboard quarter of The Numatic struck the starboard forward quarter of The Irving. This was the place where the damage was later found on The Irving. (It will be noted that the damage occurred on the starboard forward quarter of The Irving because she was being towed stern first.) About 20 minutes later, he noticed that The Irving had taken a decided list, went to her assistance, and found that she was shipping water very fast.

■ From this evidence I find that the blow was a negligently hard one caused by the inefficient manner in which this tow was being maneuvered, particularly in view of the fact that The Irving was being towed stern first and not tied securely, which in turn caused The Irving to swing back and forth out of a straight line. The tugs did not have complete control over their tow and must be condemned for their failure to do so. There is an obligation upon the tugs to keep the tow straight behind the hawser tug. It was the negligent and careless maneuvering of this tow and the manner in which The Irving was tied that caused this damage. The R. J. Moran, 2 Cir., 299 F. 500, 502; The Perseverance, 2 Cir., 63 F.2d 788, 790; The Fred B. Dalzell, Jr., 2 Cir., 1 F.2d 259.

■ The libelant, the charterer of The Irving, is entitled to a decree against Petterson Lighterage & Towing Corporation based upon its charter party. Swenson v. Snare & Triest Co., 2 Cir., 160 F. 459; Terry & Tench Co. v. Merritt & Chapman D. & W. Co., 2 Cir., 168 F. 533; O'Brien Bros. v. City of New York, 2 Cir., 9 F.2d 542; Tomkins Cove Stone Co. v. Bleakley Transp. Co.,

3 Cir., 40 F.2d 249; Ira S. Bushey & Sons **v.** W. E. Hedger & Co., 2 Cir., 40 F.2d 417.

The Tice Towing Lines, Inc., undertook to tow The Irving on the order of Petterson and for that purpose furnished The Tugs Perth Amboy No. 3 and Numatic. The Tice Towing Lines, therefore, is primarily liable in personam and The Perth Amboy No. 3 in rem. Petterson is secondarily liable to the libelant.

A decree, findings of fact, and conclusions of law may be entered in acordance with this decision.